**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **BONITA ARRUDA et al,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL NO. 6:20-cv-00092-ADA** |
| **v.** | § | |
| | § | |
| **CURVES INTERNATIONAL, INC.** | § | |
| **et al,** | § | |
| *Defendant.* | § | |

**ORDER GRANTING DEFENDANTS' MOTION TO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

Before the Court is Defendants Curves International, Inc. ("Curves International"), Curves NA, Inc. ("Curves NA") and North Castle Partners ("North Castle") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6). The Court has considered the Motion, all relevant filings, and the applicable law. For the reasons set forth below, the Court finds that the Motion should be **GRANTED**.

## I.  BACKGROUND

### A.    Factual Background

This case arises from Plaintiffs' franchise agreements with Defendant Curves International and Defendant Curves NA. Curves International is a franchisor of fitness and weight loss centers to various individuals and businesses using the "Curves for Women" trade name, trademark, and system of operating procedures. ECF No. 11 at 1. Many individuals and businesses who owned a Curves franchise sued Defendants, alleging that Defendants concealed relevant information regarding the state of the Curves System from current and prospective

franchisees and that Defendant Curves International (and later Curves NA) systematically breached its agreements with Plaintiffs. *Id*. at 21, ¶ 118.

All Plaintiffs entered in franchise agreements with either Defendant Curves International or Defendant Curves NA (collectively "Curves") that outlined their continuing relationship. *Id* at 5. Plaintiffs allege that Curves represented to each Plaintiff that it would provide them with opening support, training, ongoing support, assistance selling memberships, marketing, weight loss guidance, internal and external promotions to generate business, advertising, brand maintenance, and that these representations were made to and relied upon by Plaintiffs in their decision to purchase a Curves franchise(s). *Id* at 14–15. Plaintiffs allege that Defendant Curves International's obligations, responsibilities, and liabilities under those agreements were assumed by Curves NA on March 30, 2018. *Id* at 5. Thus, Plaintiffs brought action against Defendants Curves International and/or Curves NA, alleging Defendants' breached the franchise agreements and seeking damages sustained as a result of Defendants' breaches. *Id.* at 21–64.

Additionally, Plaintiffs seek damages against Defendants Curves International, Curves NA, and North Castle Partners for violations of the Racketeer Influenced and Corrupt Organization Act. *Id.* at 64–71.  Plaintiffs allege that the Defendants engaged in mail and wire fraud by devising and executing a scheme in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343 to defraud Plaintiffs which consisted of deliberately and knowingly having franchise agreements signed and renewed, collecting franchise and transfer fees, franchise royalty fees and advertising fees with full knowledge that such franchisees would ultimately fail. *Id.* at 67–68; *Id.* at 70. Plaintiffs allege that Defendants Curves International and North Castle Partners were aware that the Curves Franchise System had become a "house of cards" and hid this information from current and prospective franchisees. *Id.* at 67. Specifically, Plaintiffs allege Curves International

2

and North Castle Partners hid from current and prospective franchisees the results of a marketing study conducted by Parthenon EY, which revealed that the Curves name had a "negative halo" and that Curves franchise locations would continue to close at a rate of more than 15% per year if nothing was done. *Id*. at 3. Additionally, Plaintiffs allege Defendants hid the information from a document known as an "Operating Blueprint," revealing North Castle's intention to "prune 1,000+" unsustainable locations. Id. at 3. Plaintiffs allege that fraudulent conduct continued after Curves International was sold and Defendant Curves NA was formed. *Id*. at 70.

### B.    Procedural Background

Prior to filing their Complaint on February 7, 2020, Plaintiffs made their demand for mediation of their disputes to Defendants Curves NA and Curves International on November 26, 2018, as required by the terms of the franchise agreements. ECF No. 13 at 2.  Defendants agreed to meditation, and Defendants argue that Curves International and Plaintiffs (except for Trait and Minicozzi) agreed to enter into a tolling agreement effective November 26, 2018. *Id*. Plaintiffs maintain the Tolling Agreement was clearly applicable to both Defendants Curves International and Curve NA. ECF No. 15.

Plaintiffs filed their Complaint on February 7, 2020, in this Court. ECF No. 1. On March 10, 2020, the Defendants filed a Motion to Dismiss claiming Plaintiffs' breach of contract and RICO claims were untimely and that they were inadequately pled. ECF No. 9. Plaintiffs amended their Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure on March 24, 2020. ECF No. 11. On April 7, 2020, the Defendants filed a Motion to Dismiss Plaintiffs Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6). ECF No. 13. Plaintiffs filed a response to Defendants' motion to dismiss Plaintiffs

Amended Complaint on May 3, 2020. ECF No. 15. On May 26, 2020, the Defendants replied to the response to the Defendant's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 17.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is both legally cognizable and plausible on its face, but the court should not evaluate the plaintiff's likelihood of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). When the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct, then the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (internal citation and quotation marks omitted).

### B. Fed. R. Civ. P. 8(a)

A motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8. *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 Fed.Appx 988, 990 (5th Cir. 2006). Although Rule 8(a)(2) requires only "a short and plain statement," factual allegations must be enough to rise beyond the speculative level. *Twombly*, 550 U.S. at 555. When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money" and the "court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id*. at 557–558.

### C. Fed. R. Civ. P. 9 (b)

Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Thus, allegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). This standard "stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation." *Id.* (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). As such, "a party must state with particularity the circumstances constituting fraud," in other words, the "who, what, when, and how" of the fraud alleged. FED. R. CIV. P. 9(b); *U.S. ex rel. Williams v. Bell Helicopter Textron, Inc*., 417 F.3d 450, 453 (5th Cir. 2005).

## III. ANALYSIS

### A.  The Amended Complaint Fails to State Viable RICO Claims

RICO provides a private civil action to recover damages for injury to one's business or property by the conduct constituting the violation. To state a § 1962(c) civil RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *See, e.g., Sealima SPRL v. Imrex, Co.*, 473 U.S. 479, 496 (1985). An act of "racketeering activity," commonly referred as a "predicate act," is defined to include criminal acts such as mail and wire fraud. *See* 18 U.S.C § 1961 (defining "racketeering activity"); *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.,* 920 F.3d 958, 964 (5th Cir. 2019) (referring to racketeering activity as a "predicate act"). In order to rise to the level of "racketeering activity" there must be two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

**1.  Plaintiffs fail to sufficiently allege a predicate act**

Plaintiffs bring civil RICO claims against all Defendants based on mail and wire fraud. ECF No. 11 at ¶¶ 387, 400. Mail and wire fraud claims require: (1) a scheme to defraud; (2) the use of mails or, if by wire, the interstate use of the wires to execute the scheme; (3) the use of mails or wires being incident to the essential execution of the scheme; and (4) actual injury to the plaintiff. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 428 (5th Cir. 1990); *United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997).

RICO claims based on allegations of fraud, such as wire or mail fraud, are subject to the heightened pleading burden imposed by Rule 9(b). *See, e.g., Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Rule 9(b) requires particularity in pleading the circumstances constituting fraud; this requirement applies to the pleading of fraud as a predicate act in a RICO claim. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 1139. Moreover, "a complaint can be long-winded, even prolix, without pleading with particularity." *Williams*, 112 F.3d at 175. If predicate acts of fraud are not pled with the particularity required by Rule 9(b), civil RICO claims are subject to dismissal. *See e.g., Ahmad v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (failure to plead predicate acts of fraud with particularity is enough to justify dismissal of a civil RICO claim), *cert. denied*, 118 S. Ct. 1165 (1998).

In this case, Plaintiffs have not satisfied the pleading standard under Rule 9(b) relating to allegations of an ongoing scheme to defraud. The Fifth Circuit has stated "that nondisclosure can constitute proof of a scheme to defraud only where the defendant is under a duty to

disclose." *U.S. v. Harris*, 821 F.3d 589, 600 (5th Cir. 2016). Other circuits have similarly concluded that a mail or wire fraud violation can be premised on a non-disclosure only if there is an independent duty of disclosure. *See Eller v. EquiTrust Life Ins. Co*. (9th Circ. 2015) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme."); *McCulloch v. PNC Bank Inc.,* 298 F.3d 1217, 1225 (11th Cir. 2002) ("nondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose either by statute or otherwise."). Moreover, one who fails to disclose material information prior to the consummation of a transaction only commits fraud when he is under a duty to do so. *See Carroll v. Fort Jams Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). Here, Plaintiffs failed to allege in the Amended Complaint that Defendants had a duty to disclose the omitted information regarding the state of the Curves System in their communications with Plaintiffs.

In their response to Defendants' Motion to Dismiss, Plaintiffs argue as a franchisor, Curves International, and later Curves NA, were required by the Federal Trade Commission's Franchise Rule ("FTC Rule") to provide certain disclosures to prospective franchisees in Franchise Disclosure Documents ("FDDs"). ECF No. 15 at 12. The FTC Rule is contained within the Federal Trade Commission Act, 15 U.S.C. §§ 41–58, ("FTCA"). Plaintiffs cite the FTC Rule's "general market" disclosure requirement, which requires the franchisor to disclose "[t]he general market for the product or service the franchisee will offer. In describing the general market, consider factors such as whether the market is developed or developing, whether the goods will be sold primarily to a certain group, and whether sales are seasonal." ECF No. 15 at 12. Specifically, in their response to Defendant's Motion, Plaintiffs argue that Defendants were required by this rule to disclose that Defendants were aware that their trade name and

system had developed a "negative halo" in the market (i.e. "marketing study") and North Castle's intention to "prune" franchises (i.e. "Operating Blueprint"). *Id.* at ¶¶ 389, 398. Thus, Plaintiffs allege that the mailing and wiring of misleading and fraudulent FDDs are examples of predicate RICO crimes committed by the Defendants. ECF No. 11 at ¶¶ 389, 398.

Plaintiffs concede that the FTC Rule does not provide a private cause of action; nevertheless, Plaintiffs contend the rule does impose a duty upon franchisors which may be the basis for a cause of action in fraud or RICO. ECF No. 15 at 13. Plaintiffs cite no authority for this contention. *Id.* This Court does not find that the federal disclosure rule imposes a duty upon Defendants that can be the basis for a cause of action in RICO. The Court's rejection of Plaintiffs' attempt to support their civil RICO claim with an alleged violation of the FTCA is consistent with courts in this and other circuits' holdings that there is no private cause of action for violations of the FTCA. *See Fulton v. Hecht,* 580 F.2d 1243, 1248–9 n. 2 (5th Cir.1978); *see also Morrison v. Back Yard Burgers, Inc.,* 91 F.3d 1184, 1187 (8th Cir.1996) (same); *R.T. Vanderbilt Co. v. Occupational Safety & Health Review Comm'n,* 708 F.2d 570, 574–75 n. 5 (11th Cir.1983) (same); *Holloway v. Bristol–Myers Corp.,* 485 F.2d 986, 988–89 and 1001–02 (D.C.Cir.1973); *Carlson v. Coca–Cola Co.,* 483 F.2d 279, 280–81 (9th Cir.1973) (same).

A small minority of jurisdictions have held that violations of the federal disclosure rule may be admissible as evidence in a state law cause of action. *See Florida Auto Auction of Orlando, Inc. v. United States,* 74 F.3d 498, 502 n.2 (4th Cir. 1996) (rejecting an argument that a duty imposed by federal regulations cannot give rise to a state common law claim); *TC Tech. Mgmt. Co. v. Geeks on Call Am., Inc.*, No. 2:03-CV-714-RAJ, 2004 WL 5154906, at *5 (E.D. Va. 2004) (holding that a franchisee could use the FTC rule in establishing a fraud by omission claim against a franchisor who concealed information relating to earnings claims); *Rodopoulos v.*

*Sam Piki Enters., Inc.*, 570 So.2d 661, 666 (Ala. 1990) (holding that federal franchise disclosure rule created a duty to disclose applicable to common law claims). However, this is a federal cause of action and not a state law cause of action. Moreover, other federal statutes without a private right of action have not been held to create an independent duty to disclose that can be used as the basis in a RICO case. *See Ayres v. General Motors Corp*., 234 F.3d 514 (11th Cir. 2000) (holding that component part manufacturer that failed to disclose product defect as required by the National Traffic and Motor Vehicle Safety Act could not be liable for RICO based on mail or wire fraud because Congress did not provide private right of action for Safety Act disclosure violations).

Even if this was a state law cause of action, Plaintiffs could not rely on alleged violations of the FTCA to support their state claims. Texas does not have a specific franchise law; thus, Texas law does not impose any additional disclosure requirements upon franchisors. *See* Peter L. Loh & Brantely A. Smith, *The Franchise Rule and State Franchise Law* Requirements, Thomson Reuters, Practical Law Practice Note, 2019 WL 0201259. As a result, Texas courts have held that plaintiffs cannot rely on alleged violations of the FTCA to support their state claims. *See Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, at *7 (N.D. Tex. May 18, 2012) ("Wade cannot rely on alleged violations of the FTCA to support her state claims and the court *sua sponte* moves for their dismissal."). Under the Texas Deceptive Trade Practices Act ("Texas DTPA"), Texas prohibits any false, misleading, or deceptive acts or practices. Tex. Bus. & Com. Code § 17.46. Thus, some Texas courts have allowed a violation of the FTCA to be used as the basis for finding an independent violation of the Texas DTPA. *See Texas Cookie Co. v. Hendricks & Perlata, Inc.,* 747 S.W.2d 873, 877 (Tex. App.–Corpus Christi 1988, writ den.). In *Texas Cookie Co.,* the court allowed such an argument because it reasoned that there is no

private federal remedy for failing to make disclosures required by the FTC. *Id*. Nonetheless, the Fifth Circuit recently pointed out that "no provision of Texas or Federal Law declares violations of the FTC Franchise Rule to be actionable deceptive trade practices under the Texas DTPA." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016) (holding the district court did not err "when it dismissed [plaintiff's] FTC claims based on allegedly incomplete disclosure in the FDD."). Therefore, the Court concluded that "the mere fact that a franchisor violated the FTC Rule did not give rise to a claim under the Texas DTPA." *Id*.

Additionally, Plaintiffs could not rely on alleged violations of the FTCA to give rise to a common-law state law claim for fraud because under Texas law franchise relationships do not give rise to confidential or fiduciary duties. *See, e.g.*, *Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992) (refusing to recognize a fiduciary duty between franchisor and franchisee). Moreover, under Texas law, there is no duty to disclose without evidence of a confidential or fiduciary relationship. *Ins. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). As the Eighth circuit correctly concluded, "[a] plaintiff should not be permitted to plead violation of FTC regulations as part of a state common law fraud case. A decision to the contrary could be interpreted as substituting violation of FTC regulations for state law requirements, thereby effectively extending a private cause of action under the Federal Trade Commission Act." *Morrison,* 91 F.3d at 1187.

Even if the FTC rule imposed a duty upon Defendants that could be a basis for a cause of action in RICO, Plaintiffs' RICO cause of action must fail. First, Plaintiffs have not alleged facts to plausibly suggest that Curves International, and later Curves NA were required by the FTC to disclose the information in the "Operating Blueprint" and the marketing study in the FDDs. *See Langford v. Rite Aid*, 231 F.3d 1314, 1315 (11th Cir. 2000) (affirming district court's dismissal

of civil RICO class action pursuant to Rule 12(b)(6) because plaintiff had failed to allege facts suggesting that defendant had a duty to disclose). Plaintiffs' argument that this information falls within the purview of the FTC Rule's "general market" disclosure requirement is a legal conclusion that is outside of the Amended Complaint. Even if this assertion was in the Amended Complaint, mere conclusory statements are not entitled to an assumption of truth under Iqbal. *See Iqbal,* 566 U.S. at 1940. Plaintiffs cite no authority for their contention that Curves International, and later Curves NA were required by the FTC to disclose information from the "Operating Blueprint" and the marketing study in the FDDs. Second, Plaintiffs make no allegation that North Castle shared the information from the "Operating Blueprint" with either Curves International or Curves NA. Thus, it is unclear that Curves International or Curves NA could have disclosed this information in the FDDs. Therefore, the mailing and wiring of allegedly misleading and fraudulent FDDs cannot be examples of predicate RICO acts committed by Defendants because Plaintiffs failed to sufficiently allege Defendants had duty to disclose the omitted information in the FDDs.

In the Amended Complaint, Plaintiffs also allege predicate acts of mail and wire fraud through the forwarding of franchise agreements, emails, and other correspondence to franchisees and prospective franchisees. ECF No. 11 at ¶¶ 389, 398. However, in their response to Defendant's Motion, Plaintiffs only argued that the Defendants had a duty to disclose this information in the FDDs they filed. ECF No. 15 at 12. Plaintiffs do not argue that the Defendants had a duty to disclose this information in the emails and other correspondence. *Id*. Moreover, the purpose of the FTC Franchise Rule is to give "prospective purchasers of franchises the material information they need in order to weigh the risks and benefits of such an investment." *See* Steven Toporoff, *FTC Issues Update Franchise Rule*, Thomson Reuters News Release, 2007 WL

157141. The statute states that a "[p]rospective franchisee means any person (including any agent, representative, or employee) who approaches or is approached by a franchise seller to discuss the possible establishment of a franchise relationship." 16 C.F.R. § 436.1. Therefore, the FTC Rule does not create a duty upon franchisors to disclose information with current franchisees and these alleged communications cannot be predicate acts.

For example, one of Plaintiffs' alleged predicate acts is an email from Monty Sharma, the CEO appointed by North Castle Partners, LLC, sent to all franchises on February 9, 2016. ECF No. 11 at 4, ¶ 28. The email allegedly identified several areas in which the franchisor represented it was making positive changes to assist the franchisees, but the email did not disclose the results of the marketing study. *Id.* This is not a properly pleaded predicate act, as an email to current franchisees cannot be an example of a predicate act because the FTC Rule applies to prospective franchisees. *See* 16 C.F.R. § 436. Moreover, even if Defendants were required by FTC to provide information regarding the general market for the product, the Sharma email noted "we continue to underperform in North America as a system." *Id.* at 14. Therefore, this email cannot form the basis for mail or wire fraud.

These other possible predicate acts of mail and wire fraud alleged by Plaintiffs also do not satisfy the pleading requirements of Rule 9(b). Plaintiffs do not specify the "other electronic communications" or "other correspondence" to franchisees and potential franchisees to establish the predicate act of mail and wire fraud in the Amended Complaint. ECF No. 11 at ¶¶ 389, 398. One section in the Amended Complaint that alleges Curves International "continually sent misleading electronic communications which hid the dire circumstances surrounding the Curves franchise system." *Id.* at 4, ¶ 27. Another section alleges that prospective franchisees relied on "many other representations made to them by Curves at their peril." *Id.* at 15, ¶ 83. However, the

Amended Complaint does not specify when these "other electronic communications" or "other correspondence" were made nor which Plaintiffs received these communications. *Id.* at 4, ¶ 27. Similarly, the Amended Complaint does not allege any specifics regarding the "other representations" that were made to them. *Id.* at 15, ¶ 83. Therefore, the alleged "other electronic communications," "other correspondence" and "other representations" cannot form the basis for mail or wire fraud. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("Thus, 'loose references to mailings and telephone calls' in furtherance of a purported scheme to defraud will not do. Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications.") (citations omitted).

This Court is reluctant to allow ordinary business contract or fraud disputes to be transformed into federal RICO claims. As the Third Circuit articulated, "if garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole. Virtually every litigant would have the incentive to file their breach of contract and tort claims under the federal civil RICO Act, as treble damages and attorney's fees would be in sight." *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999). The "pattern of racketeering activity" that Plaintiffs allege demonstrate possible ongoing violations of the rules of professional responsibility and possible breaches of contract, but Plaintiffs do not allege the requisite predicate acts under RICO with particularity. Moreover, a "[b]reach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO." *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999)); *see also Sanchez v. Triple-S Management,*

*Corp.*, 492 F.3d 1, 12 (1st Cir. 2007) ("breach of contract itself [does not] constitute a scheme to defraud").

Therefore, with regards to the overall scheme, Plaintiffs' averments regarding omissions must fail because Plaintiffs fail to adequately plead that Defendants had a duty to disclose the information. *See Harris,* 821 F.3d at 600. Moreover, the predicate crimes of mail and wire fraud are not plead with the adequate particularity. Thus, the Court need not reach the issues of whether Plaintiffs have sufficiently alleged a pattern of racketeering, as this issue would require Plaintiffs to first successfully plead the predicate acts of alleged fraud. Failure to comply with Rule 9(b) authorizes the Court to dismiss the pleadings. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Therefore, with no viable allegations about mail or wire fraud, Plaintiffs' Amended Complaint fails to state a civil RICO claim and therefore is **DISMISSED.**

## 2. Plaintiffs lack Standing to bring a civil RICO claim

Even if the FTC rule imposed a duty upon Defendants that could be a basis for a cause of action in RICO, many of Plaintiffs in this case lack standing to bring their RICO claims as they fail to allege that their injuries were proximately caused by any racketeering activity. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 488 (2006).

To state a civil RICO claim under § 1962, a plaintiff must establish that he has standing to sue. *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 521 (5th Cir. 1995) ("The standing provision of civil RICO provides that '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . and shall recover threefold the damages he sustains.' ") (citing 18 U.S.C. § 1964(c)). Therefore, a plaintiff does not have standing to sue under any section of RICO unless he or she can show an injury "by reason of" the underlying predicate acts. Accordingly, case law holds that an injured party must show that

the Section 1962 RICO violation was *both* the but-for *and* proximate cause of the injury. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); *see also Varela v. Gonzales*, 773 F.3d 704, 708 (5th Cir. 2014) (noting that the Supreme Court in *Holmes v. Secs. Inv'r Protection Corp.*, 503 U.S. 258, 265–68 (1992) determined that "by reason of" connotes proximate cause, *i.e.*, "some direct relation between the injury asserted and the injurious conduct alleged").

In their response to Defendants' Motion, Plaintiffs rely on *Torres*, where the Fifth Circuit stated "[A] person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Torres v. SGE Management, LLC*, 838 F.3d 629, 637 (5th Cir. 2016); ECF No. 15 at 16. Thus, Plaintiffs argue that whether Plaintiffs relied on a misrepresentation about the scheme set forth in the Amended Complaint is not determinative of whether Plaintiffs can prove proximate causation. *Id*. Additionally, Plaintiffs argue that like Plaintiffs in *Torres* who sought RICO damages related to a pyramid scheme, Plaintiffs' injuries in this case "arise from the scheme's payment structure and the inherent concealment of the inevitableness of those injuries." *Torres*, 838 F.3d at 640; ECF No. 15 at 16. This Court agrees that Plaintiffs can prove injury "by reason of" a pattern of mail fraud even if they had not relied on any misrepresentations. However, this case is distinguishable from *Torres* as there was no allegation of a pyramid scheme in the Amended Complaint. Moreover, the alleged injuries in this case do not arise from the scheme's payment structure, but instead from non-disclosed information.

The non-disclosed information that Plaintiffs argue constituted fraud was Defendants' knowledge that the franchise was failing, specifically that Defendants were aware that their trade name and system had developed a "negative halo" in the market and their intention to "prune" franchises. ECF No. 11 at ¶¶ 389, 398. As discussed earlier, Plaintiffs have not alleged facts to

plausibly suggest that Curves International, and later Curves NA were required by the FTC to disclose information regarding North Castle's drafting of the "Operating Blueprint" in the FDDs. However, assuming Plaintiffs pled enough facts to plausibly suggest Curves International and later Curves NA were required by the FTC to disclose information regarding the marketing study in the FDDs, many of Plaintiffs' claims would still fail. According to Plaintiffs, sometime in 2015 North Castle and Curves International learned of the "negative halo" allegedly plaguing the Curves brand. Under the FTC Franchise Rule, Defendants were obligated to provide the FDD at least 14 days before each Plaintiff entered into their Franchise Agreement. 16 CFR § 436.2(a). Therefore, BV Boomers, Fit and Firm, Deegan, KV Fitness, 2 Josie's, Grandmaiter, the Haleys, Haley-Morrell, Best Health/the Hashimis, Yako, Femme Fit All, Montoya, Noble, PWO, Paollilo, RKP, Preston, Reeves, Jenny Shaff, Solomon, MMLC, and Healthy Hips entered into their franchise agreements, and thus received FDD's, before 2015—which was before Defendants even received the results from the marketing study. It is correct that a civil RICO plaintiff does not need to be directly harmed by all the alleged predicate acts, because in many cases harm from one of the enumerated predicate acts is sufficient. *See Vild v. Visconsi,* 956 F.2d 560, 567 (6th Cir.1992). However, for these plaintiffs, even if the it was a predicate act for Defendants to not disclose the information from the marketing study to prospective franchisees in an FDD, these plaintiffs would not have been harmed by Defendants' conduct, as they would have entered into the franchise agreements *before* the completion of the marketing study. Therefore, Plaintiffs (listed above) have not stated viable RICO claims.

**B.  Plaintiffs' Breach of Contract Claims**

Because the only federal claim in the case will be dismissed, the remaining question is whether Plaintiffs have satisfactorily alleged a basis for exercising diversity jurisdiction over their state-law claims.

Federal courts are vested with subject-matter jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States," or where the case in controversy exceeds $75,000 and is between citizens of different states, or between citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. §§ 1331, 1332(a)(1)–(2) (2012). A federal court may have jurisdiction over related, state-law claims on the basis of supplemental jurisdiction. 28 U.S.C. § 1367 (2012). A federal court has no power to adjudicate claims where subject-matter jurisdiction does not exist and, consequently, must dismiss the action. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); *see* FED. R. CIV. P. 12(h)(3). The Court has an obligation to examine its subject-matter jurisdiction *sua sponte* at any time. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.").

The Supreme Court has made it abundantly clear—in a case that also involved a dismissed RICO claim—that "[a] district court's decision whether to exercise [supplemental jurisdiction over state-law claims] after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Defendants argue that if Plaintiffs' RICO claims do not survive the motion, all surviving breach of contract claims should be dismissed because: (1) it would not promote judicial economy, convenience, fairness or comity to sustain them in

federal court; and (2) Plaintiffs have not adequately plead complete diversity. ECF No. 13 at 19. Plaintiffs argue that if Plaintiffs' RICO claims do not survive the motion, all surviving breach of contract claims should not be dismissed because this Court has diversity jurisdiction over all but two of the Plaintiffs in this case. ECF No. 15 at 9. Additionally, Plaintiffs request as a matter of judicial economy, convenience, fairness, and comity that this Court retain supplemental jurisdiction over the breach of contract claims of the two Plaintiffs, BV Boomers, Inc. and Tonya Grandmaiter. *Id.*

Absent any pendent federal claims, this Court only has jurisdiction over state law claims unless there is complete diversity of parties. *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (supplemental jurisdiction over state law claims only appropriate when there are also pending federal claims). Here, Plaintiffs Grandmaiter and BV Boomers and the Defendants Curves International and Curves NA are alleged to be Texas citizens. ECF No. 11 at ¶¶ 43, 49, 74, 75. Because two Plaintiffs and Defendants share Texas citizenship, diversity jurisdiction is defeated. *See McLaughlin*, 376 F.3d at 353 (complete diversity requires all persons on one side of controversy to be citizens of different states than all persons on other side). Moreover, "[the] general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011). This rule typically controls "when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

In *Parker & Parsley Petroleum Co. v. Dresser Industries*, the Fifth Circuit found that the district court "abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims." 972 F.2d 580, 588 (5th Cir. 1992). The Fifth Circuit found that it would not "serve judicial economy to reward a plaintiff by allowing it into federal court

when it pleads a baseless RICO suit," and that, "given the widespread abuse of civil RICO, it does not seem unreasonable to require that a party risk losing its state claims if it insists upon bringing a groundless RICO claim." *See Parker & Parsley*, 972 F.2d at 586–87. In this case, as in *Parker & Parsley*, the Court finds that none of the factors in 28 U.S.C. § 1367(c) weigh in favor of retaining supplemental jurisdiction over the remaining state law claims, and declining supplemental jurisdiction impairs neither judicial economy, convenience, fairness, nor comity. *See Parker & Parsley*, 972 F.2d at 587 (considering § 1367(c) factors along with factors of judicial economy, convenience, fairness, and comity). Accordingly, the remaining state law claims are hereby **DISMISSED** without prejudice.

**SIGNED** this 27th day of July, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE